COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Humphreys and O'Brien
Argued by videoconference

UNPUBLISHED

DONALD H. CREEF, III

                                        MEMORANDUM OPINION* BY
v.        Record No. 0622-20-1          CHIEF JUDGE MARLA GRAFF DECKER
                                        JULY 27, 2021
MARINDY L. CREEF


FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
L. Wayne Farmer, Judge

Corrynn J. Peters (Phillips & Peters, PLLC, on briefs), for appellant.

Brandon H. Zeigler (Erin C. McDaniel; Parks Zeigler, PLLC, on brief), for appellee.


Donald H. Creef, III (the husband), appeals a final divorce decree ending his marriage to

Marindy L. Creef (the wife). He argues that the circuit court erred in entering the order, granting the

divorce, fashioning the equitable distribution award, setting spousal and child support, and awarding

the wife attorney's fees. For the reasons that follow, we affirm in part, reverse in part, and remand

to the circuit court. In addition, we grant in part the wife's request for attorney's fees incurred on

appeal.

I.  BACKGROUND[1]

The parties married in 2003 and had three children. After fourteen years of marriage, the

wife filed for divorce on the ground of desertion.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In accordance with familiar principles of appellate review, the facts are recited in the light most favorable to the wife, as the prevailing party below. Armstrong v. Armstrong, 71 Va. App. 97, 102 (2019).

In late 2018, the wife propounded discovery to the husband, and the trial court entered an order setting both a trial date and various pre-trial deadlines, including for the completion of discovery and the filing of witness and exhibit lists. When the husband did not respond to wife's discovery request, she filed a motion to compel and to prevent the husband from using any evidence at trial that he did not produce in discovery. From the bench on February 4, 2019, the court ordered the husband to respond by February 25, 2019. At the judge's request, the wife's attorney prepared an order to compel reflecting that ruling. However, the husband's attorney never endorsed the order or forwarded it to the court for entry.

On July 2, 2019, the wife filed a second motion requesting sanctions. She noted that the husband "emailed partial discovery responses" on April 30, 2019, but she suggested that they were "severely deficient and did not include any documents." As a result, the wife asked that the husband be denied "any requested relief . . . not support[ed] by his [discovery] responses" and "be denied the right to present evidence" not "fully disclosed" or "properly identified" in those responses.

On July 22, 2019, less than two weeks before the date scheduled for trial, the husband made a motion to continue the evidentiary hearing based on the claim that he was unable to travel from his residence in a different state for financial reasons. The circuit court denied the motion and held the evidentiary hearing on August 2, 2019. At the beginning of the hearing, the court entered the February order to compel and ruled that the husband could not present evidence beyond "the parameters of what he provided" in his late interrogatory responses. It also prohibited him from putting on witnesses and exhibits due to his failure to file the required lists as directed by the pre-trial scheduling order. The husband did not appear for the hearing, nor did his attorney present any evidence.

On January 14, 2020, the circuit court issued a letter opinion granting the wife a divorce on the ground of desertion. It made an equitable distribution award, which included a provision regarding a $100,000 life insurance policy. The court ordered the husband to pay the wife $2,500 for monthly spousal support and child support for an amount following the child support guidelines. It also required that the husband pay a portion of the wife's attorney's fees.

The letter opinion ordered the parties to prepare a final decree and submit it to the court within fourteen days, but they failed to do so. On March 20, 2020, more than two months later, the wife made a motion for the circuit court to enter a final divorce decree.

The circuit court subsequently issued a final divorce decree entered *nunc pro tunc* to January 28, 2020, the date that would have complied with the mandate in the letter opinion. That final order incorporated the letter opinion. The circuit court also determined that the monthly amount of child support owed by the husband was $1,913. Further, it specified that spousal support was effective April 25, 2018. Additionally, the order provided that a number of actions were due "within 90 days of the entry of the final decree." The husband filed objections to the letter opinion and opposed the entry of the final order.

## II. ANALYSIS

On appeal, the husband raises multiple challenges to the final divorce decree, and the wife asks for an award of attorney's fees. In addressing these issues, we are guided by well-established legal principles.

This Court reviews the circuit court's legal conclusions *de novo*. Navas v. Navas, 43 Va. App. 484, 487 (2004). In contrast, an appellate court will not set aside a circuit court's factual findings unless "plainly wrong or without evidence to support [them]." Hughes v. Hughes, 33 Va. App. 141, 146 (2000) (quoting Farley v. Farley, 9 Va. App. 326, 328 (1990)). If credible evidence in the record supports the court's findings, this Court "may not retry the facts

or substitute [its] view of the facts" for that of the circuit court. Armstrong v. Armstrong, 71 Va. App. 97, 105 (2019) (quoting Bedell v. Price, 70 Va. App. 497, 504 (2019)). Further, the circuit court, as "the trier of fact[,] ascertains a witness' credibility, determines the weight to be given to [his or her] testimony, and has the discretion to accept or reject any of the witness' testimony." Khalid-Schieber v. Hussain, 70 Va. App. 219, 234 (2019) (quoting Street v. Street, 25 Va. App. 380, 387 (1997) (*en banc*)). Whether the evidence satisfies the burden of persuasion and supports the court's findings are questions of fact, and we defer to that court's findings of fact unless plainly wrong or without evidence to support them. See id. at 229.

For those matters raised in this appeal that fall within the circuit court's discretion, we will not decide that "an abuse of discretion has occurred" unless "reasonable jurists could not differ" on the conclusion that the court erred. See Du v. Commonwealth, 292 Va. 555, 564 (2016) (quoting Grattan v. Commonwealth, 278 Va. 602, 620 (2009)). "This bell-shaped curve of reasonability governing . . . appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Id. (quoting Sauder v. Ferguson, 289 Va. 449, 459 (2015)).

## A. *Nunc Pro Tunc* Order

The husband contends that the circuit court erred in entering the final order of divorce *nunc pro tunc*, or after the fact back to a prior date, because there was no earlier memorialized final order in the case.

On January 14, 2020, the circuit court issued a letter opinion. In it, the court made numerous rulings and directed counsel to prepare the final divorce decree and submit it to the court within fourteen days. However, the parties did not do so, due at least in part to a difference of opinions about one of the terms. On March 20, 2020, the wife, through counsel, made a motion for the circuit court to enter a final divorce decree.

The court subsequently issued a final divorce decree dated *nunc pro tunc* to January 28, 2020. In that order, it incorporated the letter opinion and also added some provisions that were not included in the letter opinion.[2]

On March 24, 2020, the circuit court issued a subsequent letter opinion explaining the entry of the *nunc pro tunc* order. It stated that the January 14, 2020 letter opinion directed counsel "to provide a final decree within 14 days" but that "[c]ounsel failed to do so." The opinion explained that as a result, the court entered the *nunc pro tunc* order "to January 28, 2020," fourteen days after the first letter opinion was issued. The husband objected to the entry of the *nunc pro tunc* order as an "improper use" of the court's *nunc pro tunc* power.

On appeal, this Court initially remanded for the circuit court to "clarify the entry date of the final decree." Then on remand, the court entered an "order of clarification" providing that "the final decree was entered on April 2, 2020."

The question on appeal is whether the final decree was entered *nunc pro tunc* to January 28, 2020, as provided in the final order, or entered April 2, 2020, in accordance with the order of clarification that the circuit court entered on remand from this Court. "A court has power to make an entry *nunc pro tunc,* in the exercise of its discretion, to correct the court's records so that they speak the truth." Jefferson v. Commonwealth, 269 Va. 136, 140 (2005); see also Code § 8.01-428(B) (providing that a court "at any time" can "correct[]" "[c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission"). "In making such an entry, the court's power is restricted to placing upon

---

[2] In the final decree, the circuit court specified that the monthly amount of child support owed by the husband was $1,913. In this final order the court also provided that spousal support was effective April 25, 2018, and that a number of actions were due "within 90 days of the entry of the final decree." The letter opinion stated that the children's non-insurance medical expenses should be divided by the parties based on their respective incomes, and the final order specified those percentages. Further, it required that any party intending to change residence or employment give the court advance notice of that change.

the record evidence of judicial action that actually has been taken." Jefferson, 269 Va. at 140. "'[W]hen the record clearly supports such corrections,' we will uphold a trial court's *nunc pro tunc* amendment . . . ." White v. White, 38 Va. App. 389, 392 (2002) (first alteration in original) (quoting Cutshaw v. Cutshaw, 220 Va. 638, 641 (1979)); see also Council v. Commonwealth, 198 Va. 288, 293 (1956) (providing that the evidence supporting a *nunc pro tunc* order should be clear and convincing).

While the law provides for *nunc pro tunc orders*, it is also clear regarding the limitations on the power to enter such orders. "[T]he amendment or *nunc pro tunc* entry should not be . . . to show what the court should have done as distinguished from what actually occurred." Jefferson, 269 Va. at 140 (first alteration in original) (quoting Council, 198 Va. at 292). Similarly, "[i]t is not the function" of a *nunc pro tunc* entry "by a fiction to antedate the actual performance of an act which never occurred, to represent an event as occurring at a date prior to the time of the actual event, 'or to make the record show that which never existed.'" Ziats v. Commonwealth, 42 Va. App. 133, 141 (2003) (quoting Council, 198 Va. at 293). A court may not enter a *nunc pro tunc* order if it adversely affects the rights of one of the parties, such as by foreclosing a party's opportunity to appeal by backdating the final order to a date such that the window for appeal has already ended. McDowell v. Dye, 193 Va. 390, 394 (1952) (quoting Baker v. Gaskins, 24 S.E.2d 277, 278 (W.Va. 1943)). Simply put, a *nunc pro tunc* entry operates "under the accepted fiction that [it] relates back to the date of the original action of the court." Davis v. Mullins, 251 Va. 141, 149 (1996).

There was no January 28, 2020 order that the *nunc pro tunc* order was correcting. A review of the record leads to the inescapable conclusion that the supposed clerical error that the circuit court attempted to remedy by using its *nunc pro tunc* power was its failure to enter a final order on or before January 28, 2020, as it had intended. However, "[i]t is not the function" of a

*nunc pro tunc* "entry 'by a fiction . . . to represent an event as occurring at a date prior to the time of the actual event.'" Ziats, 42 Va. App. at 141 (quoting Council, 198 Va. at 293). Further, although the instant final order largely followed the provisions in the first letter opinion, it imposed some new terms that were not part of the letter opinion it incorporated. Therefore, the order did more than simply memorialize an earlier ruling and was an improper use of the court's *nunc pro tunc* power. Compare Johnson v. Johnson, 72 Va. App. 771, 776-79 (2021) (affirming the lower court's determination that it did not have the power to enter a *nunc pro tunc* order based on a partially ambiguous oral ruling), with Cutshaw, 220 Va. at 641 (affirming the validity of a *nunc pro tunc* order memorializing an oral ruling entered a year later due to a "ministerial omission"). Consequently, the final decree contains an error to the extent that the record reflects that it was entered *nunc pro tunc* to January 28, 2020.[3]

### B. Motion to Continue

The husband argues that the circuit court erred in denying his motion to continue the evidentiary hearing. He contends that the denial was an abuse of discretion because "the matter was not ready for trial" and he was prejudiced because he was unavailable to present evidence.

"The decision of whether to grant a continuance is committed to the discretion of the circuit court." Shah v. Shah, 70 Va. App. 588, 593 (2019). This Court "will reverse 'a circuit court's ruling on a motion for a continuance . . . only upon a showing of abuse of discretion and resulting prejudice to the movant.'" Id. (alteration in original) (quoting Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34 (2007)). When considering whether the circuit court abused its discretion in denying a motion for continuance, we recognize that the court "has inherent authority to administer cases on its docket." Id.

---

[3] We note that at oral argument, the husband's counsel acknowledged that at this point correcting the date of the final order is ministerial only.

The husband did not appear at the August 2, 2019 hearing but asked, through counsel, for the matter to be continued. He claimed that he was in Boston, Massachusetts, for work and was unable to travel to the hearing, even though his employment contract had ended. The husband also indicated that he needed more time to respond to the wife's November 2018 discovery request.

In denying the motion, the circuit court noted that the matter had already been pending for "well over a year." The court also commented on the husband's lack of "cooperati[on] throughout the[] proceedings." It did not credit the husband's claim that he was unable to attend the hearing, particularly since the hearing had been scheduled over seven months earlier.

When the husband requested the continuance, the matter had been pending in the circuit court for approximately fifteen months. The court was entitled to reject the husband's suggestion that he could not attend the hearing. See generally Shah, 70 Va. App. at 593-95 (reviewing denial of a motion to continue). In addition, the husband had more than sufficient time to gather the additional information he wanted to present in response to discovery, and he provided no compelling reason for his failure to do so. Based on this record, it was within the circuit court's purview to consider his motion to continue as a tactic to extend his pattern of non-cooperation. Accordingly, the circuit court did not abuse its discretion in denying the motion to continue.

C. Desertion

The husband contends that the circuit court erred in granting the wife a divorce on the ground of desertion. He suggests that the evidence did not support a finding that he deserted the marriage.

At the outset, the wife argues that this assignment of error is procedurally barred. The record shows that the husband objected to desertion as the ground for divorce when he filed

- 8 -

post-decision objections on March 2, 2020. See Rule 5A:18. Parties can "meet the mandates of Rule 5A:18 in many ways," including stating the grounds for an objection in a motion to reconsider or in an objection to a final order. Lee v. Lee, 12 Va. App. 512, 515-16 (1991) (*en banc*); see Menninger v. Menninger, 64 Va. App. 616, 620 n.3 (2015). Therefore, the husband adequately raised this issue under Rule 5A:18.

As for the merits of the husband's argument, desertion is the "breach of matrimonial duty—an actual breaking off of the matrimonial cohabitation coupled with an intent to desert in the mind of the deserting party." Purce v. Patterson, 275 Va. 190, 195 (2008) (quoting Petachenko v. Petachenko, 232 Va. 296, 298-99 (1986)). Moreover, to constitute desertion, the departure must occur "without the consent and against the will of the other spouse." Barnes v. Barnes, 16 Va. App. 98, 101 (1993).

The wife testified that the husband left the marital home in April 2018. At that time, he informed her that he "was done" and no longer wanted to be married to her. The husband packed his clothes and personal belongings and told the wife that he was never returning. After the parties spent two weeks discussing the state of their marriage, the husband told the children he would not live there again. The wife testified that after the two weeks, she wanted to stay married but capitulated and "agreed" to the husband's departure. According to the wife, he "cut [her] off from different funds" so that she could not "access any of [their] accounts."

The husband argues that the court could not find that he deserted the wife in light of the portion of her testimony in which she said that she "agreed" to his departure from the marital residence. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to [his or her] testimony, and has the discretion to accept or reject any of the witness' testimony." Khalid-Schieber, 70 Va. App. at 234 (quoting Street, 25 Va. App. at 387). The circuit court was in a position to put the wife's testimony in context. It acted within

its purview as factfinder by accepting as credible the evidence that the wife did not consent to the husband's departure from the marital home.

The husband further contends that the circuit court erred by granting the divorce on the wife's uncorroborated testimony. The law is clear that a court cannot grant a divorce based on "the uncorroborated testimony" of one or both of the parties. See Code § 20-99(1). Even so, "[e]very element or essential charge need not be corroborated, nor must the corroborating evidence, standing alone, prove the grounds for divorce, but corroboration must give sufficient strength to the complainant's testimony to be clearly worthy of belief." Bchara v. Bchara, 38 Va. App. 302, 312 (2002) (quoting Emrich v. Emrich, 9 Va. App. 288, 296 (1989)). "The question of corroboration is one of fact, the decision of which in each case depends upon the peculiar facts of that particular case." Pommerenke v. Pommerenke, 7 Va. App. 241, 245 (1988) (quoting Martin v. Martin, 202 Va. 769, 774 (1961)).

The wife's mother testified that she lived next door to the marital residence and the parties permanently separated in April 2018. In addition, the husband agreed in his answer to the complaint that he left the marital residence in April 2018. Based on the evidence, the circuit court made the factual findings that the husband deserted the wife and that sufficient evidence corroborated the wife's claim of desertion. See id. at 245-46 (holding that the "surrounding circumstances" corroborated the wife's adultery). The record does not show that the court was plainly wrong in making these findings, and thus we conclude that it acted appropriately within its purview as fact finder. See Bchara, 38 Va. App. at 312 (noting that corroboration is not required for every element). Therefore, we affirm the grant of a divorce on the ground of desertion.

D.  Equitable Distribution

The husband argues that the circuit court failed to follow the requirements in Code § 20-107.3 in fashioning the equitable distribution award.  Specifically, he alleges that the court either failed to value certain marital property at all or failed to do so as of the date of the evidentiary hearing.  He also challenges the directive regarding life insurance.

On review, a circuit court's "equitable distribution award will not be overturned unless the [appellate court] finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'"  Anthony v. Skolnick-Lozano, 63 Va. App. 76, 83 (2014) (quoting Wiencko v. Takayama, 62 Va. App. 217, 229-30 (2013)).  To the extent that the appeal requires an examination of the proper interpretation and application of Code § 20-107.3, it involves issues of law, which the Court reviews *de novo*.  See David v. David, 287 Va. 231, 237 (2014).

Code § 20-107.3 requires the circuit court, after classifying and valuing the parties' property, to distribute it between them.  Fox v. Fox, 61 Va. App. 185, 193 (2012).  In doing so, the "court shall determine the value of any such property as of the date of the evidentiary hearing."  Code § 20-107.3(A).

The valuation of an asset for purposes of equitable distribution is an "issue of fact, not of law."  Howell v. Howell, 31 Va. App. 332, 340 (2000).  The party who requests equitable distribution has the burden of proof on this calculation.  See Anthony, 63 Va. App. at 88.  However, "[p]arties should not be allowed to benefit" from "their failure to introduce evidence at trial."  Bowers v. Bowers, 4 Va. App. 610, 617 (1987) (quoting In re Marriage of Smith, 448 N.E.2d 545, 550 (Ill. App. Ct. 1983)).  Consequently, a circuit court "may, without doing violence to the statute, make a monetary award without giving consideration to the . . . valuation of every item of property, where the parties have been given a reasonable opportunity to provide

- 11 -

the necessary evidence to prove . . . valuation but through their lack of diligence have failed to do so." Id. at 618. When "'the parties have had an adequate opportunity to introduce evidence but have failed to do so,'" "appellate courts 'cannot . . . reverse and remand' equitable distribution cases." Hamad v. Hamad, 61 Va. App. 593, 609 (2013) (quoting Bowers, 4 Va. App. at 617).

The husband challenges the circuit court's treatment of the marital residence, the vehicles, and various financial accounts. In considering the marital residence, the court concluded that "[t]here was no evidence . . . offered" regarding its value. It ordered the wife to refinance the mortgage debt and to relieve the husband of any obligation. Alternatively, the parties could sell the house and divide any proceeds or remaining balance equally. The court did not attempt to value the vehicles, assigning two to the husband and one to the wife. It valued the E-Trade account, Tetra Tech Stock Fund, individual brokerage account, Tetra Tech retirement account, and Wells Fargo Parsons retirement account as of the date of separation. The court assigned these accounts to the wife.

Additionally, it found that the husband closed the principal retirement account after withdrawing $93,428.10 without the wife's consent and that the wife was entitled to one-half of the amount the husband withdrew from the account.

The wife had limited evidence available to her regarding the couple's finances. She explained that the husband "cut . . . off" her access to their accounts before permanently moving out of the marital home. Therefore, she relied on the husband's responses to discovery to show the values of assets. This case was pending for more than a year before the evidentiary hearing occurred. The husband had ample opportunity to present evidence regarding asset valuation but, instead, remained uncooperative. Consequently, the circuit court's decision to not value certain

property or to value it as of the date of separation does not provide a basis for us to reverse and remand the equitable distribution ruling. See Hamad, 61 Va. App. at 609.

The husband also contests the circuit court's finding that the wife was "entitled" to half of the principal retirement account funds that he withdrew before the hearing. He asserts this was error because the evidence showed that the account "did not have a value" as of the date of the evidentiary hearing. He argues that the court did not have the authority to value the account as of an earlier date because the wife did not make a motion for it to do so pursuant to Code § 20-107.3. He further suggests that it was error because the wife's evidence showed that he used the withdrawn money to pay marital debts.

The wife testified that the husband withdrew $93,428.10 from the principal retirement account without discussing it with her beforehand. The circuit court recognized the appellant's contention that he used the funds "to pay debt" but emphasized that the record did not contain any evidence "as to the nature of the 'debt.'" Although the court did not make an express finding of waste or dissipation, the ruling that the wife was entitled to half of the amount withdrawn and the resulting monetary award to the wife signifies its conclusion that the husband used the withdrawn funds for non-marital purposes.

In Virginia, "the use of marital funds for non-marital purposes can be considered as a factor in determining an equitable distribution award." Barker v. Barker, 27 Va. App. 519, 537 (1998). When "'one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown,'" the applicable term is "[d]issipation." Clements v. Clements, 10 Va. App. 580, 586 (1990) (quoting

- 13 -

Hellwig v. Hellwig, 426 N.E.2d 1087 (Ill. App. Ct. 1981)).[4]  Whether or not a circuit court finds dissipation, it should consider the parties' negative non-monetary contributions to the parties in fashioning an equitable distribution award.  Barker, 27 Va. App. at 537; see Code § 20-107.1(E)(6), (13).  Based on the record in this case, the circuit court did not err in considering the withdrawal to be a negative contribution affecting the equitable distribution award.

Finally, the husband also contends the court erred by ordering him, as part of the equitable distribution award, to obtain a life insurance policy with the wife as the beneficiary for the duration of his spousal support obligation to her.  He argues that a court may order a party only to *maintain* an *existing* life insurance policy.  The husband notes that no life insurance policy on his life existed at the time of the evidentiary hearing and asserts that the court was without authority to order him to obtain a new policy.

A "court may order a party to . . . maintain any existing life insurance policy on the insured party's life that was purchased during the marriage, is issued through the insured's employment, or is within effective control of the insured."  Code § 20-107.1:1(A).  A court can implement such an order only if "the payee has been designated as a beneficiary of such policy during the marriage."  Id.  In addition, an insurance holder is excused from this obligation if the policy is "issued by an employer" and "is terminated or canceled by the employer or there is an involuntary change in employment by the payor causing the policy to no longer be in effect."  Code § 20-107.1:1(F).

---

[4] Similarly, waste is the "dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy."  Booth v. Booth, 7 Va. App. 22, 27 (1988); see Smith v. Smith, 18 Va. App. 427, 430-31 (1994) (using "dissipation" and "waste" interchangeably).

The record indicates that leading up to the hearing, the husband had two insurance policies on his life. One policy, through Principal Life, had lapsed before the hearing. The other policy was through Tetra Tech for $426,000. At the hearing, the husband's attorney proffered that the Tetra Tech policy had also lapsed due to the termination of his employment. The court noted that the attorney's proffer did not constitute evidence and that the only evidence before it was the husband's earlier response that he had the life insurance policy.

In the final decree, the circuit court specifically noted that the husband cancelled his Principal Life insurance policy. The order nonetheless directed that "[i]n lieu of the Tetra Tech Policy and the Principal Policy that was cancelled by the defendant, the defendant shall maintain a life insurance policy on his life with a value of $100,000.00 naming the wife as beneficiary."

Due to the cancellation of the Principal Life Insurance policy, the husband clearly could not be required to maintain it pursuant to Code § 20-107.1:1(A). The issue here is whether the directive to "maintain" a $100,000 policy was an order to maintain the Tetra Tech policy in compliance with the statute or whether it was an order to obtain a new policy.

Although the court used the word "maintain," mirroring the statute, it ordered the husband to hold a $100,000 policy "in lieu of" the Tetra Tech policy in the amount of $426,000. We conclude that the phrase "in lieu of" and the fact that the husband would need a policy in a different amount than the Tetra Tech policy signifies that he would need to get a new policy in order to comply with the court order. For this reason, the circuit court's directive regarding life insurance exceeded its statutory authority under Code § 20-107.1:1(A).

In sum, we hold that the circuit court acted appropriately in fashioning the portions of the equitable distribution award relating to the marital residence, the vehicles, and various financial accounts. We further hold that it abused its discretion by ordering the husband to "maintain" a

new life insurance policy in the amount of $100,000. Therefore, we reverse the circuit court's judgment related to the insurance policy.

## E. Spousal and Child Support

The husband argues that the spousal support and child support awards were not based on sufficient evidence. Specifically, he challenges the circuit court's findings concerning the wife's inability to work outside the home and the amount of his annual income. The husband also suggests that the court erred in making the spousal support award because the wife did not present sufficient evidence of her expenses.

At the outset, we note that Virginia's statutory scheme mandates that a determination of spousal support requires consideration, either directly or indirectly, of the equitable distribution provisions governing the marital property. Code § 20-107.1(E)(8) (relating to spousal support). The circuit court is also required to consider the impact of the equitable distribution award on child support. See Code § 20-108.1(B)(11), (15) (permitting a court to deviate from the presumptive calculation under the child support guidelines based on the "[e]arning capacity, obligations, and financial resources" of the parents as well as "the equities for the parents and children"). Accordingly, our ruling reversing the life insurance portion of the equitable distribution award and remanding for additional proceedings requires that the circuit court, on remand, also revisit the awards of spousal and child support. See Robinson v. Robinson, 46 Va. App. 652, 671 (2005) (en banc). However, because the issues raised by the husband in these assignments of error are likely to recur on remand, we address them. See Spotsylvania Cnty. Sch. Bd. v. Seaboard Sur. Co., 243 Va. 202, 212 (1992); Crockett v. McCray, 38 Va. App. 1, 8 (2002).

Settled principles provide that a court's award of spousal or child support will be reversed only for an abuse of discretion. See, e.g., deCamp v. deCamp, 64 Va. App. 137, 144 (2014).

The governing spousal support statute requires that a circuit court consider certain factors, but the weighing of those factors falls within the sound discretion of the court. Pilati v. Pilati, 59 Va. App. 176, 183 (2011). Consequently, as long as an "evidentiary foundation exists" to support the factual findings underlying a circuit court's spousal support award "and the record discloses that the court has given consideration to each of the statutory factors," this Court "will not disturb its determination as to spousal support on appeal." Fox, 61 Va. App. at 203-04. See generally Fadness v. Fadness, 52 Va. App. 833, 846 (2008) (noting that the party seeking spousal support bears the burden of producing evidence to support the award). Similarly, a "court's calculation of child support obligations is a combination of mandatory steps and broad discretion." Niblett v. Niblett, 65 Va. App. 616, 624 (2015) (citing Code § 20-108.1). "[U]nless it appears from the record that the circuit court . . . has abused [its] discretion by not considering or by misapplying one of the statutory mandates, the child support award will not be reversed on appeal." Id. (first alteration in original) (quoting Milam v. Milam, 65 Va. App. 439, 451 (2015)).

Determination of both spousal and child support obligations requires that a circuit court first calculate the incomes of the spouses. See Code §§ 20-107.1(E)(1), -108.2(B), (C). The wife testified that she was unable to work due to her childcare responsibilities and her poor health. At the time of the hearing, the children were six, nine, and fourteen years old. The wife explained that she suffered from numerous health problems and required hospitalization four to six times a year. She also presented evidence regarding the husband's income in the form of his employment contract for 2019. Through counsel, however, the husband asserted that the contract had not been renewed and he was placed on leave without pay until another position became available.

The circuit court awarded the wife $2,500 monthly for spousal support and $1,913 for child support. The record supports the conclusion that in doing so, the court considered the

statutory factors and the evidence before it.  See Code §§ 20-107.1, -108.2.  It found that the husband's gross monthly income was $14,515.18, including per diem payments.  The court concluded that the wife was unable to work outside the home and had no income.  It also found that the wife "suffer[ed] from" a variety of medical conditions but that the husband was in good health.

Viewing the evidence in the light most favorable to the wife, she was unable to work and relied on the husband to support her.  It is true, as the husband highlights, that the wife testified that she was able to work a minimal amount during the fourteen-year marriage.  She stated that over the previous fourteen years, she had worked some as a real estate agent but, because of her health, was unable to perform the travel required for the job.  She also testified that she had her "beauty license" but cut the hair of only "[m]aybe two" people per month.  The wife explained that her health interfered with her ability to maintain employment.  The circuit court acted within its purview as factfinder in accepting as credible the wife's statement that she was unable to work and her description of her health despite her testimony about the minimal work she performed during the course of the marriage.  See Khalid-Schieber, 70 Va. App. at 234.

In addition, the husband urges us to conclude that the evidence was insufficient to find that he was employed as of the date of the evidentiary hearing.  The employment contract that the wife used as evidence of the husband's income provided that it was for employment through May 2019, approximately three months before the evidentiary hearing.  She also introduced evidence that the contract had been renewed multiple times in 2017 and 2018.  The husband worked throughout the parties' fourteen-year marriage.  This record provides a sufficient evidentiary foundation for the circuit court's factual finding that the husband's income continued to the date of the hearing.  See Fox, 61 Va. App. at 205.  The court was not required to accept as true the proffer of husband's counsel at the hearing that the husband was no longer employed.

Cf., e.g., Logan v. Commonwealth, 67 Va. App. 747, 758 (2017) (explaining that the purpose of a proffer is to allow the court a fair opportunity to rule on an issue or put the content of excluded evidence in the record to allow adequate appellate review).

The husband also argues that the circuit court erred in awarding spousal support because the wife did not present sufficient evidence of her financial need. "Spousal support involves a legal duty flowing from one spouse to the other by virtue of the marital relationship." Patel v. Patel, 61 Va. App. 714, 729 n.8 (2013) (quoting Stumbo v. Stumbo, 20 Va. App. 685, 691 (1995)). Code § 20-107.1(E) provides that in determining spousal support, the circuit court shall consider the "obligations, needs and financial resources of the parties," their standard of living during the marriage, the duration of the marriage, the parties' physical and mental conditions, their contributions to the well-being of the family, their property interests, their earning capacities, the equitable distribution provisions, and any other relevant factors.

Although the statute "requires the consideration of the 'needs' of the 'parties,'" it "does not . . . create a mathematical formula primarily reliant upon the input of financial data." Robbins v. Robbins, 48 Va. App. 466, 484 n.10 (2006). "Instead, § 20-107.1(E) requires only [that] the factfinder . . . 'consider' the estimated needs of the parties. By doing so, the statute thus authorizes a flexible, commonsense approach to this aspect of the factfinding exercise." Id.

The wife testified that during the marriage the parties' standard of living was "[u]pper middle class." She stated that the parties agreed early in the marriage that the husband would be the primary income earner and she would take care of the children. Under this arrangement, her role as caregiver allowed him to advance his career.

In awarding spousal support, the circuit court noted that the only evidence introduced regarding the parties' needs were monthly mortgage payments of $2,738.23 on the family's

home and an unspecified amount of medical expenses for the children but that the parties enjoyed an "upper middle class" standard of living during the marriage.

Although the wife did not present evidence of the specifics of her expenses, she established that she relied on the husband's income for financial support. The parties agreed early in the marriage that the husband would be the primary income earner and the wife would take care of the children. The circuit court's decision to award the wife spousal support after considering her general living expenses was not an abuse of discretion under these circumstances. See Robbins, 48 Va. App. at 484 n.10 (holding that Code § 20-107.1(E) requires that the fact finder "'consider' the estimated needs of the parties").

The record, viewed in the light most favorable to the wife, supports the court's factual findings underpinning its spousal support and child support determinations. See Fox, 61 Va. App. at 205 (affirming a spousal support award). In addition, the circuit court considered the factors listed in Code § 20-107.1(E) in awarding spousal support "and provided the reasoning and the factual basis for its award." See Fadness, 52 Va. App. at 847.

### F. Attorney's Fees in the Circuit Court

The husband challenges the award of attorney's fees to the wife in the circuit court. This Court reviews a circuit court's award of attorney's fees for an abuse of discretion. Id. at 848. "The key to determining a 'proper award of [attorney's] fees is reasonableness under all the circumstances.'" Milot v. Milot, 62 Va. App. 415, 426 (2013) (alteration in original) (quoting Joynes v. Payne, 36 Va. App. 401, 429 (2001)). When the circuit court "properly considered the circumstances of the case," this Court will uphold the award. Id.

Here, the circuit court considered the "significant disparity between the incomes and earning potential[s] of the parties." It also considered the husband's fault in leaving the marriage and the difficulty he caused with legal proceedings. It specifically concluded that his

"unwillingness to comply [with] the [c]ourt's orders during this matter related to the answering of discovery and the payment of support undoubtedly increased the cost of litigation." The court consequently ordered the husband to pay approximately 82% of the wife's legal fees, representing his share of the parties' total income.

After considering the parties' financial resources and the other circumstances of the case, we conclude that the circuit court did not abuse its discretion in its decision to award the wife attorney's fees. Consequently, the award is affirmed.

## G. Attorney's Fees on Appeal

The wife asks for an award of attorney's fees incurred on appeal. Pursuant to Rule 5A:30, in specified cases in which attorneys' fees and costs are recoverable under Title 20 of the Code of Virginia, the Court of Appeals may award some or all of the fees and costs requested or "remand the issue to the circuit court . . . for a determination thereof." Rule 5A:30(b)(1)-(2). Whether to award fees and costs is discretionary. See id.; Alwan v. Alwan, 70 Va. App. 599, 613 (2019). "In determining whether to make such an award, the Court may consider factors including whether the requesting party has prevailed, whether the appeal was 'fairly debatable' or frivolous, and whether other reasons exist to support an award of attorney's fees and costs." Dixon v. Dixon, 71 Va. App. 709, 722 (2020) (citing Rule 5A:30(a), (b)(3)). In addition, Rule 5A:30(b)(3) specifically directs this Court to "consider all the equities of the case."

In light of all the factors set out in Rule 5A:30, the applicable case law, the issues raised, and a review of the record, we exercise our discretion to grant in part the wife's request for appellate attorney's fees. Of the husband's eight assignments of error, six are wholly without merit. Not only are they without merit, but many of the issues raised on appeal stem from the husband's failure to cooperate with the legal process or put evidence in the record. In contrast,

the two errors alleged in his appeal that are in fact errors were not of the wife's making. "We have no reluctance imposing fees in such circumstances." Fox, 61 Va. App. at 208.

We remand this case to the circuit court to award the wife attorney's fees associated with her defense of the husband's arguments, with the exceptions of the assignments of error regarding the *nunc pro tunc* nature of the order and equitable distribution as it relates to the life insurance. "On remand, we direct the [circuit] court to determine a reasonable division of labor between the issues argued on appeal, and to make a partial fee award based upon this determination." Id.

### III. CONCLUSION

For the reasons stated, we affirm in part, reverse in part, and remand. On remand, the circuit court must correct the final order to reflect that it was not entered *nunc pro tunc* and instead was entered on April 2, 2020, in accordance with its January 14, 2021 order of clarification issued on remand from this Court. In addition, it must reconsider equitable distribution due to the life insurance error noted in this opinion, reconsider spousal support and child support as necessitated by the reversal of the equitable distribution award, and calculate a partial award of attorney's fees to the wife incurred in this appeal as stated above.

Affirmed in part, reversed and remanded in part.